**Jan GERRITSEN and Johannes C.J. Aerts, Appellants,**

v.

**Shoji SHIRAI, Masakzu Fukushima, Satoru Miyamoto and Masahiro Miyazaki, Appellees.**

**No. 91–1480.**

United States Court of Appeals, Federal Circuit.

Nov. 19, 1992.

---

**2.** Neely apparently tries to finesse § 2D1.11's post-sentencing effective date by simply omitting the date from his brief.

Jack E. Haken, U.S. Philips Corp., Tarrytown, N.Y., argued, for appellants.

Fred E. McKelvey, Sol., U.S. Patent & Trademark Office, Arlington, Va., argued, for amicus curiae, Com'r of Patents & Trademarks. With him on the brief was Murriel E. Crawford, Associate Sol. Of counsel was James T. Carmichael.

Before MICHEL, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and RADER, Circuit Judge.

MICHEL, Circuit Judge.

Jan Gerritsen and Johannes C. J. Aerts are the named inventors in United States Patent No. RE 33,592 (the RE '592 patent), which is directed to a color display tube comprising an in-line electron gun. Gerritsen and Aerts appeal that portion of the August 6, 1991 decision of the United States Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences (Board), Interference No. 102,103, concluding that they did not comply with 37 C.F.R. § 1.662(b) (1991) and that as a sanction they are not entitled to claims 10–22 of the RE '592 patent. Because we agree that appellants failed to follow 37 C.F.R. § 1.662(b), we affirm the Board's decision to the extent it holds Gerritsen and Aerts are sanctionable. However, because the Board's choice of sanction is based on clearly erroneous findings of fact constituting an abuse of discretion, we vacate the sanction and remand.

## BACKGROUND

Shirai, et al., provoked the underlying interference by copying claim 1 of Gerritsen and Aerts' U.S. Patent No. 4,742,279 (the '279 patent) in their application. The examiner-in-chief had set the period for filing preliminary motions to expire on July 19, 1989, but later postponed the deadline to August 19, 1989 after granting Shirai, et al.'s, motion to extend. Gerritsen and Aerts filed an application with the PTO on August 31, 1989[1] to reissue their '279 patent, adding thirteen claims to the original patent. This reissue application matured into the RE '592 patent with new claims 10–22.

By letter dated August 31, 1989, Gerritsen and Aerts notified the examiner-in-chief and Shirai, et al., that appellants sought reissuance of the '279 patent and also enclosed a copy of the reissue application. But the appellants did not move to add the reissue application to the ongoing interfer-

ence. Instead, the examiner-in-chief redeclared the interference when Gerritsen and Aerts surrendered the '279 patent in exchange for the RE '592 patent. The examiner-in-chief designated the new reissue claims 10–22 as additional claims corresponding to the interference count.

As a result of appellants' failure to move to add their reissue application to the interference proceeding, the examiner-in-chief determined that Gerritsen and Aerts had failed to comply with 37 C.F.R. § 1.662(b) and ordered them to show cause why an appropriate sanction should not be imposed under 37 C.F.R. § 1.616 (1991). In reply, Gerritsen and Aerts contended that a timely preliminary motion, i.e., a motion made during the preliminary motions period, could not have been filed because they did not determine the need to file for reissue until after the close of the preliminary motions period. The examiner-in-chief found their reply largely nonresponsive, but deferred the decision on the type of sanction to final hearing. And upon final hearing, the Board concluded that as a sanction Gerritsen and Aerts were not entitled to claims 10–22 of the RE '592 patent although they obtained priority over Shirai, et al., to the subject matter of the interference count.

Gerritsen and Aerts appeal the sanction decision of the Board. Although Shirai, et al., have entered an appearance, the appellees have not filed a brief supporting the Board. The Commissioner of Patents and Trademarks appears as *amicus curiae* and argues for affirmance of both the Board's decision to sanction and choice of sanction. We have jurisdiction pursuant to 35 U.S.C. § 141 (1988) and 28 U.S.C. § 1295(a)(4)(A) (1988).

## I.

Prior to oral argument in this court, Gerritsen and Aerts made a "MOTION FOR JUDGMENT ON THE RECORD," which was filed as their reply brief. The basis for the motion is Shirai, et al.'s, failure to submit a responsive brief. Gerritsen and

---

**1.** The appellants executed their reissue applica-     tion on August 25, 1989 in The Netherlands.

Aerts infer that Shirai, et al., "no longer believes that the sanctions imposed were appropriate or necessary." Consequently, appellants conclude that this court should enter judgment reversing the Board's sanction decision because there is "no longer any controversy between the parties." [2]

This position rings hollow. Gerritsen and Aerts have not cited any authority, and we are aware of none, for the proposition that we are required to reverse the Board whenever appellees do not file a responsive brief urging affirmance. Such a position is inconsistent with appellate practice and case law. *See* Fed.R.App.P. 31(c) (denying an appellee who failed to file a brief the right to be heard at oral argument); *Pink Lady Corp. v. L.N. Renault & Sons, Inc.,* 265 F.2d 951, 121 USPQ 465 (CCPA 1959) (considering issue of likelihood of confusion on the merits even when appellee filed no brief). *See also Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 143, 109 S.Ct. 971, 973, 103 L.Ed.2d 118 (1989) (deciding appeal when only *amici curiae* submitted briefs in support of judgment below); *Perkins v. Kwon,* 886 F.2d 325, 326, 12 USPQ2d 1308, 1309 (Fed.Cir. 1989) (reviewing appropriateness of Board's priority determination when appellee did not participate and Commissioner appeared as *amicus curiae*). Our duty to review the case for reversible error does not turn on whether the appellees have filed a brief. Having invoked our jurisdiction, appellants cannot now be heard to say that we need not carry out our appellate function solely because Shirai, et al., have not responded.

Gerritsen and Aerts also apparently take exception to the Commissioner proceeding

in this appeal without Shirai, et al. To the extent appellants are challenging the Commissioner's standing, the argument is without merit since the Commissioner is appearing as *amicus curiae*. *See id.*

## II.

We define, for the first time, our standard of review for the Board's decision to impose a sanction and for its choice of sanction under 37 C.F.R. § 1.616 against an interference party who allegedly failed to comply with an interference regulation. We begin by turning to the agency's regulations. According to 37 C.F.R. § 1.616 [3]:

> An examiner-in-chief or the Board *may* impose an *appropriate* sanction against a party who fails to comply with the regulations of this part or any order entered by an examiner-in-chief or the Board. An appropriate sanction may include among others entry of an order:
>
> (a) Holding certain facts to have been established in the interference;
>
> (b) Precluding a party from filing a motion or a preliminary statement;
>
> (c) Precluding a party from presenting or contesting a particular issue;
>
> (d) Precluding a party from requesting, obtaining, or opposing discovery; or
>
> (e) Granting judgment in the interference.

(Emphasis added.) Therefore, the PTO regulation gives the examiner-in-chief and the Board discretionary authority to decide both whether to impose a sanction and what sanction to impose.

When a decision pursuant to a permissive statute concerns only PTO practice, we review the decision for abuse of

---

**2.** Gerritsen and Aerts also assert that the Board imposed the sanction against them "in direct response to the complaints" of Shirai, et al. However, Shirai, et al., contend in their "REPLY TO GERRITSEN'S MOTION FOR JUDGMENT ON THE RECORD," and the record shows, that the examiner-in-chief initially raised the sanction issue. As our analysis demonstrates, we need not determine whether Shirai, et al., asked for sanctions in order to dispose of appellants' "MOTION FOR JUDGMENT ON THE RECORD."

**3.** 35 U.S.C. § 6(a) (1988) permits the Commissioner of Patents and Trademarks to "establish regulations, not inconsistent with law, for the conduct of proceedings in the Patent and Trademark Office." Congress thus delegated plenary authority over PTO practice, including interference proceedings, to the Commissioner. On its face, 37 C.F.R. § 1.616 represents a permissible exercise of that authority. Since the decision to impose a sanction against Gerritsen and Aerts was authorized by law, it comports with the Administrative Procedure Act, 5 U.S.C. § 558(b) (1988).

discretion. *Schenley Indus., Inc. v. E. Martinoni Co.*, 408 F.2d 1049, 1052, 161 USPQ 279, 281 (CCPA 1969) (refusal to accept substitute verifications under 35 U.S.C. § 26 found not to be an abuse of discretion). The abuse of discretion standard is also appropriate in the present case. As the Commissioner established 37 C.F.R. § 1.616 under the authority of 35 U.S.C. § 6(a), we see no reason in law or logic to apply a different standard of review to the Board's decision merely because it acted directly under a permissive regulation, rather than a permissive statute. Congress granted the Commissioner broad powers over PTO practice. By imposing an unduly expansive standard of review, which in effect limits that discretion, we would be acting contrary to the statute and congressional intent. This is particularly so here, where the issue is the application of a sanction on record facts in an individual case, not the construction of a regulation allowing sanctions in appropriate cases.

This approach to appellate review of Board sanction decisions is consistent with the regulatory scheme for conducting interferences. The preamble to 37 C.F.R. § 1.601 (1991) generally calls for the "just, speedy, and inexpensive determination of every interference." A narrow standard of review would promote the efficient determination of interferences. Moreover, the abuse of discretion standard gives proper recognition to the interest of the Board and the examiner-in-chief in maintaining control over the management of interference proceedings.

Nor is the standard we adopt today extraordinary in an administrative context; rather, it adheres to settled law on judicial review of discretionary agency actions. In *Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182, 93 S.Ct. 1455, 36 L.Ed.2d 142, *reh'g denied*, 412 U.S. 933, 93 S.Ct. 2746, 37 L.Ed.2d 162 (1973), the Supreme Court held that the Secretary of Agriculture's choice of sanction may not be overturned unless it was "unwarranted in law" or so "without justification in fact" as to consti-

tute an abuse of discretion. *Id.* at 185–86, 188, 93 S.Ct. at 1458, 1459 (quoting *American Power & Light Co. v. Securities & Exch. Comm'n*, 329 U.S. 90, 112–13, 115, 67 S.Ct. 133, 145–46, 147, 91 L.Ed. 103 (1946)). We use the same standard to review disciplinary sanctions in government employment cases. *See, e.g., Weston v. United States Dep't of Housing & Urban Dev.*, 724 F.2d 943, 949 (Fed.Cir.1983) (punishment overturned only if it "exceeds that permitted by statute or regulations or is so harsh that it amounts to an abuse of discretion") (citation omitted).

Analogies drawn from appellate review of district court sanction decisions also provide guidance. Federal Rule of Civil Procedure 37 permits a trial court to award sanctions for discovery abuses.[4] Applying regional circuit law, this court has frequently concluded that the abuse of discretion standard governs our review in Rule 37 cases. *See, e.g., Badalamenti v. Dunham's, Inc.*, 896 F.2d 1359, 1361–62, 13 USPQ2d 1967, 1969–70 (Fed.Cir.) (determining the district court abused its discretion in imposing sanctions under Federal Rule of Civil Procedure 37(d) when party responded to document request by objecting), *cert. denied*, — U.S. —, 111 S.Ct. 142, 112 L.Ed.2d 109 (1990); *Chemical Eng'g Corp. v. Essef Indus., Inc.*, 795 F.2d 1565, 1575, 230 USPQ 385, 392–93 (Fed.Cir.1986) (determining no abuse of discretion in award of expenses and fees under Federal Rule of Civil Procedure 37(c) for refusal to admit truth of matters set forth in requests); *cf. Bio–Rad Labs., Inc. v. Nicolet Instrument Corp.*, 739 F.2d 604, 615, 222 USPQ 654, 662–63 (Fed.Cir.) (no abuse of discretion for district court to deny motion for new trial based on abuse of discovery process), *cert. denied*, 469 U.S. 1038, 105 S.Ct. 516, 83 L.Ed.2d 405 (1984). Similarly, the abuse of discretion standard is used if the district court has exercised its other sanctioning powers. *See Chambers v. NASCO, Inc.*, — U.S. —, —, 111 S.Ct. 2123, 2138, 115 L.Ed.2d 27 (1991) (inherent

---

**4.** The alternative sanctions authorized by Federal Rule of Civil Procedure 37(b)(2) are analogous to those enumerated in 37 C.F.R. § 1.616.

power); *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 385–86, 110 S.Ct. 2447, 2450, 110 L.Ed.2d 359 (1990) (Federal Rule of Civil Procedure 11).

In light of the nature of the regulatory scheme established by the PTO under a general congressional grant of authority and the standard of review in comparable areas of the law, we hold today that we review both a 37 C.F.R. § 1.616 decision to sanction an interference party and the choice of sanction for abuse of discretion. An abuse of discretion occurs if the Board's decision (1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact findings; or (4) follows from a record that contains no evidence on which the Board could rationally base its decision. *Heat & Control, Inc. v. Hester Indus., Inc.,* 785 F.2d 1017, 1022, 228 USPQ 926, 930 (Fed.Cir.1986) (citations omitted). *See Kingsdown Medical Consultants, Ltd. v. Hollister Inc.,* 863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed.Cir.1988) and *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1039, 22 USPQ2d 1321, 1333 (Fed.Cir.1992) (combining factors 1 and 4). We will not merely substitute our judgment for that of the Board. *Heat & Control,* 785 F.2d at 1022.

### III.

■ The Board sanctioned Gerritsen and Aerts because they allegedly did not comply with the requirements of 37 C.F.R. § 1.662(b), which provides:

If a patentee involved in an interference files an application for reissue during the interference and omits all claims of the patent corresponding to the counts of the interference for the purpose of avoiding the interference, judgment may be entered against the patentee. A patentee who files an application for reissue other than for the purpose of avoiding the interference shall timely file a prelim-

inary motion under § 1.633(h), or show good cause why the motion could not have been timely filed or would not be appropriate.

Appellants filed their reissue application twelve days after the close of the preliminary motions period. But they neither filed a belated preliminary motion [5] to add the reissue application to the interference proceeding, nor attempted to show good cause why a timely motion could not have been made or why the belated motion would be inappropriate.

Referring to the above regulation, the Board stated "it is evident that the rule addresses and requires in its alternative portion the filing of a belated preliminary motion with a showing of good cause why the motion could not have been timely filed." Board's Op. at 11 (footnote omitted). In particular, the Board found it "significant that the portion of the rule in question does not read 'or show good cause why *a* motion could not have been timely filed'." *Id.* (footnote omitted) (emphasis in original).

Gerritsen and Aerts argue that the Board has misinterpreted and misapplied 37 C.F.R. § 1.662(b).[6] They contend that the plain meaning of its words indicates that the regulation directs a timely motion when a reissue application is filed during the preliminary motions period. Absent explicit reference to a belated motion in the regulation, appellants would have us conclude that it does not require or even contemplate a belated preliminary motion. With respect to the good cause showing, Gerritsen and Aerts apparently contend that the requirement is simply irrelevant in their case. Gerritsen and Aerts construe the regulation as inapplicable to them because they did not file their reissue application during the preliminary motions period.

The language of the regulation belies appellants' interpretation.[7] Gerritsen and

---

5. 37 C.F.R. §§ 1.645(b) and 1.635 (1991) provide for the filing of belated papers.

6. Gerritsen and Aerts do not assert that the Board's interpretation violates the Commissioner's statutory authority. *See* 35 U.S.C. § 6(a).

7. We note in passing that the regulation is directed to any patentee applying for a reissue "other than for the purpose of avoiding the interference." It is undisputed that the appellants were not trying to avoid the interference. Indeed, the examiner-in-chief redeclared the in-

Aerts' attempt to narrow the scope of the second sentence of 37 C.F.R. § 1.662(b) to timely preliminary motions is untenable. As the Board explained, "the term *the motion* in the [last phrase] of the rule refers back to the previous term *a preliminary motion under 1.633(h)."* *Id.* at 10–11 (emphasis in original). Nowhere does the regulation limit its object to "a *timely* preliminary motion." Rather, it requires a preliminary motion, timely or otherwise, to add a reissue application to an interference when the reissue application is not for the purpose of avoiding the interference. Moreover, appellants' position requires a strained reading of the regulation. We would have to read into the broad language, "[a] patentee who files an application for reissue," the further qualification: "during the preliminary motions period." And we would have to infer this qualification from the part of the regulation detailing what the patentee should do under *different* circumstances. We decline to adopt such an approach; instead, we preserve the plain meaning of the words of the regulation and affirm the Board's construction. Therefore, because appellants filed their reissue application after the close of the preliminary motions period, we conclude that 37 C.F.R. § 1.662(b) required them to file a belated preliminary motion and show good cause why a timely motion could not have been filed or why the belated motion would not be appropriate.

To the extent another preliminary motions period would have been set to allow Shirai, et al., to contest the patentability of the new reissue claims, Gerritsen and Aerts also contend that automatically add-ing reissue applications filed after the preliminary motions period would unduly delay interference proceedings.[8] However, the Board's interpretation of 37 C.F.R. § 1.662(b) does not compel an examiner-in-chief to add a reissue application to an interference, but rather recognizes the interest of the examiner-in-chief in controlling the conduct of the interference. Whether to add the reissue application and whether to reopen the proceeding to the preliminary motions stage are questions left to the sound discretion of the examiner-in-chief. In the present case, however, Gerritsen and Aerts have usurped the examiner-in-chief's authority to make those decisions through their failure to make the prompt though belated preliminary motion and good cause showing. Moreover, although the regulations contemplate expeditious determination of interferences, the regulations also permit the examiner-in-chief to extend the proceedings in appropriate circumstances. 37 C.F.R. §§ 1.645(a) & (d). It is thus not inconsistent with the regulatory scheme to require the filing of a belated preliminary motion, which may lead to an additional preliminary motions period. Assuming the examiner-in-chief would have allowed such additional period, Gerritsen and Aerts have improperly protected new reissue claims 10–22 from possible attacks by Shirai, et al.

The appellants further contend that 37 C.F.R. § 1.662(b) may not be construed so as to limit when the patentee may seek reissuance under 35 U.S.C. § 251 (1988).[9] We do not understand the Board's interpretation to limit in any way whatever bene-

terference, substituting the RE '592 patent for the surrendered '279 patent, before final hearing. Therefore, appellants were subject to the regulation.

8. Even if we agreed with Gerritsen and Aerts that the regulation does not require a belated preliminary motion, we do not necessarily avoid, and indeed may exacerbate, the delay problem. As the facts of this case indicate, the examiner-in-chief had to redeclare the interference just before final hearing. Had the examiner-in-chief established another preliminary motions period, Gerritsen and Aerts would have caused further delay by failing to make an earlier motion to add their reissue application.

9. Pursuant to 35 U.S.C. § 251,

Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid ... by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall ... reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent....

\*　　\*　　\*　　\*　　\*　　\*

fits the patentee enjoys under the statute. The Board merely required Gerritsen and Aerts to make a belated preliminary motion and good cause showing after they had filed an application for reissue. But the determination of when to file a reissue application remains with the patentee.

Gerritsen and Aerts have not shown, nor can we discern, any reason in law or policy why 37 C.F.R. § 1.662(b) did not require in this case a belated motion in conjunction with a good cause showing. Accordingly, the Board did not abuse its discretion in determining that appellants' failure to observe the regulation is sanctionable nonfeasance under 37 C.F.R. § 1.616.

### IV.

In evaluating an appropriate sanction, the Board found as a fact that Gerritsen and Aerts "in effect attempted to circumvent the authority of this Board" because they obtained the "reissue patent with claims defining the same invention as interfering claims of [their] original patent and [filed] no motion under 37 CFR 1.633(h) to add the application which matured into the reissue patent." Board's Op. at 11. The Board also found as a fact that Gerritsen and Aerts' failure to comply with the regulation has caused Shirai, et al., to be "precluded from raising issues as to new, reissue patent claims 10–22." *Id.* at 11–12. The Board further observed that although reopening the preliminary motions period "to compensate" for Gerritsen and Aerts' nonfeasance would give Shirai, et al., a chance to attack the patentability of the new reissue claims, it would be against the public interest in speedy resolution of interferences. *Id.* at 12. Upon review of the record, we can only conclude the Board has committed clear error in the above factual determinations that underlie its choice of

---

sanction. *Denen v. Buss,* 801 F.2d 385, 386, 231 USPQ 159, 160 (Fed.Cir.1986) (clearly erroneous standard applied to review fact findings of the Board).

■ Gerritsen and Aerts sent copies of their reissue application to both the examiner-in-chief of the pending interference and Shirai, et al. Since the examiner-in-chief and Shirai, et al., could have added the reissue application to the interference,[10] and since the reissue application contained claims identical to the interfering claims, it is plain that Gerritsen and Aerts did not try to obscure their actions. Accordingly, the appellants clearly did not intentionally violate 37 C.F.R. § 1.662(b) in an effort to circumvent the Board's authority.[11] The Board's finding to the contrary is therefore clearly erroneous.

■ Nor does there appear to be any substantial prejudice to Shirai, et al., as a result of Gerritsen and Aerts' nonfeasance. As we discussed above, 37 C.F.R. § 1.662(b) requires a belated preliminary motion to add the reissue application. Appellants' sanctionable conduct was their failure to make the belated motion and good cause showing. Therefore, Shirai, et al., may have been prejudiced only to the extent that if the appellants had made the proper motion, the Board would have permitted the motion to be filed and set another preliminary motions period to afford Shirai, et al., an opportunity to attack the new reissue claims. The Board clearly erred by finding appellants' failure to make the belated motion the cause of Shirai, et al.'s, lack of opportunity to raise issues with respect to the new reissue claims.

■ The facts also do not support a finding of significant prejudice to the PTO or the public interest. The Board found re-

---

10. The examiner-in-chief could have added the application to the interference under the provisions of 37 C.F.R. § 1.642 (1991). Similarly, Shirai, et al., could have made a belated preliminary motion under 37 C.F.R. § 1.633(h) to add the reissue application.

11. The Commissioner, appearing as *amicus curiae* in this case, suggests that the appellants engaged in misconduct because they executed

their reissue application six days after the expiration of the preliminary motions period. Amicus Brief at 12. But the Board drew no factual inferences from that fact in its consideration of an appropriate sanction. We therefore do not express any opinion with respect to the timing of the reissue application and any reasonable inferences from that fact. On remand, the Board may make fact findings in this regard.

opening the preliminary motions period to be against the public interest in expedition of interference proceedings. However, even if Gerritsen and Aerts had made the belated motion and good cause showing, thus protecting themselves from any sanction, the Board would still have to determine whether to allow a further preliminary motions period. Adherence to the regulation would not necessarily prevent an extension of the interference; any implication otherwise in the Board's opinion is contrary to law. Delay due to noncompliance with 37 C.F.R. § 1.662(b) also depends on whether the Board elects to set another preliminary motions period, which is beyond appellants' control.

Because the fact findings underlying the Board's selection of a sanction against Gerritsen and Aerts are clearly erroneous, we conclude that the Board abused its discretion by determining that appellants are not entitled to their reissue patent claims 10–22. *See Heat & Control, Inc.*, 785 F.2d at 1022, 228 USPQ at 930 (abuse of discretion when decision rests on clearly erroneous fact findings). Accordingly, we vacate the sanction imposed against Gerritsen and Aerts and remand to the Board for new fact findings relevant to the selection of an appropriate sanction and for imposition of the sanction.

A comparison to the law regarding dismissal of a civil action for discovery abuse under Federal Rule of Civil Procedure 37(b)(2)(C) independently supports our conclusion.[12] Before sustaining a dismissal order, appellate courts have consistently required a showing of egregious behavior, such as willful misconduct, bad faith, or fraud, and have often considered less severe sanctions. *See, e.g., Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 75 (7th Cir.1992) (willful refusal to comply with discovery order and "few other practicable sanctions"); *Minotti v. Lensink*, 895 F.2d 100, 103 (2d Cir.1990) (willful and conscious disregard of the discovery process and "dis-

trict court explored numerous options before ordering dismissal"); *Damiani v. Rhode Island Hosp.*, 704 F.2d 12, 15–16 (1st Cir.1983) (willful disobedience and consideration of other sanctions not required); *cf. Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir.1990) (sanction of default sustained given bad faith, prejudice to other party, and ineffective lesser sanctions). Courts should use dismissals as "a weapon of last, rather than first, resort." *Maggette v. Dalsheim*, 709 F.2d 800, 803 (2d Cir.1983). By contrast, the record in this case, as we discussed above, does not support a finding of intentional misconduct causing substantial prejudice to Shirai, et al. There is also no evidence that the Board considered, but rejected as inappropriate, a less severe sanction. As a result, we cannot uphold the Board's choice of sanction.

## CONCLUSION

We hold that 37 C.F.R. § 1.662(b) requires a patentee who has filed a reissue application after the close of the preliminary motions period to file a belated preliminary motion to add the application to the interference, and to show good cause why a timely motion could not have been filed or why the belated motion would not be appropriate. Gerritsen and Aerts' failure to comply with the regulation subjected them to sanctions under 37 C.F.R. § 1.616. But the Board abused its discretion in selecting a sanction because the choice was based on clearly erroneous fact findings. Therefore, we vacate the sanction denying appellants entitlement to their reissue patent claims 10–22 and remand for further proceedings consistent with this opinion.

AFFIRMED–IN–PART, VACATED–IN–PART, AND REMANDED.

---

**12.** Both dismissal with prejudice in a civil action and the Board's decision in the present case to deny Gerritsen and Aerts entitlement to their reissue patent claims 10–22 are extreme sanctions. From the perspective of the affected par-

ty, such sanctions may sound the death knell for important rights and interests. Given the similar nature of a dismissal and the Board's sanction, we find that the law under Rule 37(b)(2)(C) provides persuasive guidance here.