NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

―――――――――

**COSMIC CRUSADERS LLC, LEWIS J. DAVIDSON,**
*Appellants*

**v.**

**LAVERNE JOHN ANDRUSIEK,**
*Appellee*

―――――――――

2023-1150

―――――――――

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 92064830.

―――――――――

Decided:  October 19, 2023

―――――――――

JOSEPH J. WEISSMAN, Johnson, Pope, Bokor, Ruppel & Burns, LLP, Tampa, FL, for appellants.

VERNE ANDRUSIEK, SR., Vancouver, British Columbia, Canada, pro se.

―――――――――

Before DYK, TARANTO, and CHEN, *Circuit Judges*.

PER CURIAM.

Appellants Cosmic Crusaders, LLC and Lewis Davidson (collectively, Appellants) appeal the final order of the Trademark Trial and Appeal Board (Board) granting the *pro se* petition of Respondent Laverne J. Andrusiek (Andrusiek) seeking cancellation of Appellants' registration of the mark CAPTAIN CANNABIS for comic books. *Andrusiek v. Cosmic Crusaders LLC*, Cancellation No. 92/064,830, 2022 WL 4103636, at *1 (T.T.A.B. Sept. 6, 2022) (*Decision*).

Appellants argue that the Board procedurally erred by considering Andrusiek's allegedly unpled theory of priority (based on his own prior use of the same mark), and alternatively urge that substantial evidence does not support the Board's finding that Andrusiek had priority over Appellants. Because the Board did not abuse its discretion in construing Andrusiek's petition, and because substantial evidence supports the Board's findings regarding Andrusiek's prior use, we *affirm*.

BACKGROUND

Both Andrusiek and Appellants "sell[] comic books under the mark CAPTAIN CANNABIS, which also serves as the name of a fictitious character." *Decision*, 2022 WL 4103636, at *5. On April 2, 2014, Appellants filed for and eventually received Registration No. 4,782,920 for the mark CAPTAIN CANNABIS on comic books in International Class 16. *Id.* at *1, *7.

After learning of Appellants' registration, Andrusiek filed a petition for cancellation pursuant to 15 U.S.C. § 1052(d), citing his own prior use of the same mark reaching back into the 1970s and asserting that Appellants' later use was likely to confuse consumers. *Id.* at *1. Given that both parties used the same mark on the same goods, the parties agreed that "the only issue in dispute under Trademark Act Section 2(d) is priority." *Id.* If Andrusiek could prove that he had priority based on his earlier use of the trademark, Appellants' registration would be canceled. *Id.*

Conversely, if Andrusiek failed to show he had priority, his petition for cancellation would be denied. *Id.*

As relevant to this appeal, Appellants relied on their April 2014 registration date to prove their priority date. *Id.* at *7. Because Andrusiek "does not own an existing registration," his amended petition instead detailed his prior use of the CAPTAIN CANNABIS mark, alleging priority based on his:

> common law usage of the CAPTAIN CANNABIS trademark in U.S. interstate trade since at least January 25, 1999 when [Andrusiek] engaged in sales activities at the NATPE trade fair in New Orleans, Louisiana and bona fide commercial trade in Comic Books starting September 25, 2006 by way of direct sale of a 420/Captain Cannabis comic book to a customer in the state of Florida.

*Id.* at *6. Andrusiek "also claimed priority based on his alleged 'sales and marketing activities through his CAPTAINCANNABIS.COM web portal since April 22, 1999.'" *Id.*

On October 12, 2020, Andrusiek filed a trial brief detailing his theories of priority and evidence therefor. J.A. 735–71; Opposition No. 92/064,830, 43 TTABVUE (Andrusiek Tr. Br.), https://tinyurl.com/2xkzhpwd. He expressly and repeatedly asserted that he "may prove priority by proving prior trademark (*or analogous*) use of the CAPTAIN CANNABIS mark in the United States." Andrusiek Tr. Br. at 15 (emphasis added); *see also id.* at 16–24. In response, Appellants' trial brief set forth positions on the merits and asked the Board to strike certain portions of Andrusiek's evidence as procedurally improper, J.A. 790–97; *see also id.* at 806–08, but did not challenge Andrusiek's reliance on, or the evidence underlying, his analogous use theory.

In its final decision, the Board first found that the petition's priority claim rested on two separate arguments: actual trademark use and use of the mark analogous to trademark use. *Decision*, 2022 WL 4103636, at *6. The Board alternatively found that the parties had tried the analogous use issue "by implied consent," citing Fed. R. Civ. P. 15(b). *Id.* at *6 n.6.

As to analogous use, the Board recognized that Andrusiek had to prove not only analogous use, but also actual trademark use within a commercially reasonable time of the analogous uses. *Id.* at *8–12. Relying on Andrusiek's testimony and extensive corroborative documentation, the Board found Andrusiek engaged in analogous use of the mark from "2006 to the present, including during 2013–14," and engaged in "actual trademark use in 2017." *Id.* at *12. The Board also found Andrusiek's trademark use "to be within a commercially reasonable period of time following his analogous use in 2013–14 so as to create a 'continuing association of the mark' with Petitioner's goods." *Id.*

The Board thus resolved the priority dispute in favor of Andrusiek. *Id.* at *12–13. Given Appellants' concession that there was a likelihood of confusion between Andrusiek's mark and Appellants' mark, the Board canceled Appellants' mark. *Id.*

Appellants timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

STANDARD OF REVIEW

A. Procedural Decisions of the Board

"Decisions related to compliance with the Board's procedures are reviewed for an abuse of discretion." *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367 (Fed. Cir. 2016). Thus, we give substantial deference to the Board's decisions enforcing its own procedural rules, including case management rules related to when and how notice of an argument must be given under

the Board's own rules. *See Am. Nat'l Mfg. Inc. v. Sleep No. Corp.*, 52 F.4th 1371, 1385 (Fed. Cir. 2022) (giving "deference to the Board's application of" regulation governing adequacy of notice provided in *inter partes* review petition); *see also Sunbio Corp. v. Biogrand Co.*, No. 2021-1433, 2021 WL 5896525, at *3 (Fed. Cir. Dec. 14, 2021) ("Typically, we give deference to the [Trademark] Board's decisions related to a party's compliance with the Board's own rules."); *Gerritsen v. Shirai*, 979 F.2d 1524, 1528 (Fed. Cir. 1992) (deference warranted in "proper recognition to the interest of the Board . . . in maintaining control over the management of . . . proceedings" before it).

Given that deference, we will find an abuse of discretion only if the Board's "decision:  (1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact finding; or (4) involves a record that contains no evidence on which the Board could rationally base its decision." *Intelligent Bio-Sys.*, 821 F.3d at 1367.

## B.  Analogous Use to Show Trademark Priority

"One valid ground for cancellation is section 2(d) of the Lanham Act." *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1161 (Fed. Cir. 2002); 15 U.S.C. § 1052(d).  Section 2(d) "precludes registration when a mark is likely to cause confusion with a mark or trade name previously used or registered by another." *Herbko*, 308 F.3d at 1161–62. "[A] party petitioning for cancellation under section 2(d) must show that it had priority and that registration of the [new] mark creates a likelihood of confusion" with the petitioner's earlier mark. *Id.* at 1162. "To establish priority, the petitioner must show" certain "proprietary rights" in its mark. *Id.*  Those rights may be demonstrated by "a prior registration, prior trademark or service mark use, [or] prior use as a trade name." *Id.*

A party may also try to show that it acquired the relevant proprietary rights as a result of "prior use analogous

to trademark or service mark use." *Id.* Analogous uses are those which "create an association in the minds of the purchasing public between the mark and the petitioner's goods," but which do not constitute "technical" or "actual" trademark uses. *Id.* "Examples of use analogous to trademark use . . . include prior use of a term: in advertising brochures; in catalogues and newspaper ads; on a sample displayed at a trade show; and in press releases and trade publications." 2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 20:16 (5th ed.). These are not examples of "technical" or "actual" trademark uses because the mark is affixed to something other than the actual trade good—e.g., affixed to a press release promoting a comic book, rather than a comic book itself. *Herbko*, 308 F.3d at 1162. However, our precedent considers these uses sufficient to establish priority if they "create such an association" that it "must reasonably be expected to have a substantial impact on the purchasing public before a later user acquires proprietary rights in a mark." *Id.*

Our precedent also imposes "a reasonable timeliness requirement" on analogous uses. *Id.* at 1162–63. Following an analogous use, the party must then actually use the mark in connection with goods within a commercially reasonable timeframe. *Id.*

We review the Board's factual findings underlying a finding of analogous use and reasonable timeliness for substantial evidence. *See Zheng Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1371 (Fed. Cir. 2018); 5 U.S.C. § 706(2)(E). "Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Zheng Cai*, 901 F.3d at 1371 (internal quotation marks omitted). "Where two different conclusions may be warranted based on the evidence of record, the TTAB's decision to favor one conclusion over the other is the type of decision that must be sustained by this court as supported by substantial evidence." *Id.* (cleaned up).

## DISCUSSION

### A. The Board did not abuse its discretion by considering analogous use.

Appellants have not shown that the Board abused its discretion when it found that Andrusiek adequately pled analogous use. The Board explained that Andrusiek's petition gave fair notice of his analogous use argument when the petition distinguished between two distinct bases for Andrusiek's claim: Andrusiek's "marketing activities" on the one hand (which correspond to analogous use), and his "bona fide commercial trade" on the other (which correspond to actual use). *Decision*, 2022 WL 4103636, at \*6. Since Andrusiek's petition explicitly distinguished between these two bases for priority, the Board concluded that it gave fair notice of both distinct theories. *Id.* Moreover, the parties' conduct below suggests that Appellants had notice of the analogous use issue. Andrusiek's trial brief before the Board expressly and repeatedly asserted priority based on "analogous use," citing much of the same evidence referenced in his petition. *See, e.g.*, J.A. 756. Appellants did seek to exclude this expressly-asserted "analogous use" theory, even as they successfully sought to exclude other portions of Andrusiek's trial evidence as untimely. *Decision*, 2022 WL 4103636, at \*2–3.

Appellants' reliance on Andrusiek's reference to "common-law usage" fares little better. Whatever the meaning of "common-law usage" is in the abstract, the Board read Andrusiek's use of that phrase in context of the entire petition and concluded that it was sufficiently clear that Andrusiek alleged both actual and analogous use for the reasons described above. Reading the petition as a whole, we find no abuse of discretion in the Board's conclusion.

While we understand Appellants' argument that Andrusiek's *pro se* pleading could have been more precise, the Board emphasized that it would afford Andrusiek (and all parties) "reasonable latitude" in pleading, as long the

responding party received "fair notice" of the claims at issue. *Decision*, 2022 WL 4103636, at *6. We find no abuse of discretion in that decision.[1]

B. Substantial evidence supports the Board's findings regarding analogous use.

Appellants also challenge the Board's findings that (i) Andrusiek's prior analogous use was sufficient to impact the purchasing public, and (ii) that Andrusiek engaged in actual trademark use within a reasonable time of the relevant analogous use. Substantial evidence supports both Board findings.

On the challenge to Andrusiek's impact on the applicable market, Appellants assert that Andrusiek presented "no evidence regarding the actual perception of any potential consumers" and assert that the Board did not make sufficient findings about the specific "size of the comic book market or number of marijuana consumers," which the parties appear to agree is the relevant market. Appellants' Br. 20; *Decision*, 2022 WL 4103636, at *11 & n.13 (noting that the parties both targeted the "niche" market of "marijuana-related goods and services"). Appellants cite our decision in *T.A.B.*, asserting that we found no analogous use on a record with more evidence than Andrusiek allegedly offered in this case. Appellants' Br. 21 (citing *T.A.B. Sys. v. Pactel Teletrac*, 77 F.3d 1372, 1374–75 (Fed. Cir. 1996)).

We disagree that *T.A.B* requires reversal here. *T.A.B.* vacated a grant of summary judgment in favor of analogous use when the applicable mark was actually displayed only to "seven customers," without "any evidence that *any* air time or *any* newspaper space was purchased"—nor

---

[1] Because we affirm the Board's principal holding that Andrusiek sufficiently pled analogous use, we do not reach Appellants' challenge to the Board's alternate ground, regarding trial by implied consent.

evidence of any "advertisements," nor "any indication of 'readership'" for the handful of single-run print news articles relied upon by the Board there. *T.A.B.*, 77 F.3d at 1375, 1377. Without some indication that the seven customers constituted a substantial portion of the market, we could not conclude that the evidence of record, without more, justified granting summary judgment in favor of analogous use. *Id.* at 1377. But *T.A.B.* itself emphasized that we do not require "direct evidence" of public association. *Id.* at 1375. Instead, public association may be inferred by the fact finder "on the basis of indirect evidence regarding the opposer's use of the word or phrase in advertising brochures, catalogs, newspaper ads, and articles in newspapers and trade publications." *Id.*

That is what the Board did in the case before us—it cited Andrusiek's extensive public usage of CAPTAIN CANNABIS to promote comic books, which was well supported by the record. *Decision*, 2022 WL 4103636, at *9 (the Board citing registration and maintenance of captaincanabis.com); *id.* at *9–10 (citing Andrusiek's attendance at multiple trade shows and conventions and distribution of materials at each event); *id.* (citing attachment of photocopies of the "premier issue" of the comic book titled "420," which included explicit references to "Captain Cannabis" as the "star attraction" of the comic as well as the captaincanabis.com URL); *id.* at *10 (citing Andrusiek's shipping records of "420" comic books featuring "Captain Cannabis"); *id.* (citing statement from a publishing house reflecting Andrusiek's comic book sales); *id.* (citing active social media, including www.facebook.com/pages/Captain-Cannabis, which uses as its profile picture an image of the screenplay *Captain Cannabis: The Ultimate Hit*); *id.* at *10–11 (citing multiple interviews and profiles in trade press, including one which called Andrusiek "the George Lucas of the comic world" and one which announced him as the "creator of

CAPTAIN CANNABIS," describing a photo of the Captain Cannabis character as a "comic book alter ego").

Critically, the Board relied also on multiple news and magazine articles associating CAPTAIN CANNABIS with Andrusiek's comic books, in periodicals whose apparently-undisputed readership totaled approximately 750,000 people per month. *Id.* at *11 (citing *High Times Magazine*, with an undisputed estimated circulation of ~236,000 per month, and *Culture Magazine*, with an undisputed estimated circulation of ~500,000 per month).

The record here is amply greater than the comparatively more modest record in *T.A.B.* In the deferential posture of our present review, we cannot say there is such a failure of proof here. Given the additional evidence cited by the Board, substantial evidence supports the Board's findings that "more than a negligible portion of the relevant market" associated Andrusiek with CAPTAIN CANNABIS at the relevant times, which is all *T.A.B.* requires. *T.A.B.*, 77 F.3d at 1377.

We similarly reject Appellants' argument that the Board did not make substantively sufficient findings about the applicable market. *T.A.B.* criticized a party who conducted "utterly" no analysis of the market size. *T.A.B.*, 77 F.3d at 1377. But here, the Board expressly found that the "market for marijuana-related goods and services" was, at the relevant time, a "small" and "niche" market because of then-existing federal and state criminal penalties related to marijuana and drug paraphernalia. *Decision*, 2022 WL 4103636, at *11 & n.13. Appellants do not present any reason why, in the context of this case, the Board's findings are not adequately specific to sustain the Board's reasoned determination that enough of the consuming public associates Andrusiek's comic books with CAPTAIN CANNABIS.

Appellants' second argument is that the Board lacked substantial evidence to conclude that Andrusiek *ever* used "the CAPTAIN CANNABIS mark as a trademark," and

therefore he did not engage in trademark use within a reasonable time from the analogous use. Appellants' Br. at 22. Appellants claim that the Board relied on "a single comic book" to show actual use and assert that "the title of a single book cannot serve as a source identifier" as a matter of law, citing our decision in *Herbko*. *Id.* (citing *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1162 (Fed. Cir. 2002)). Accordingly, Appellants assert that even if Andrusiek showed analogous use, he did not show a subsequent actual use, and therefore cannot show priority.

The primary issue with Appellants' position is that it misstates the record. Rather than merely relying on the "title" of "a single comic book," the Board relied on multiple independent pieces of evidence showing Andrusiek's trademark usage. *Decision*, 2022 WL 4103636, at *12–13 (citing "all of the testimony and documentary evidence . . . considered together," including Andrusiek's evidence of actual use of the mark in connection with a related series of goods: a movie, a screenplay, and a comic book called "Captain Cannabis: 40th Anniversary"). Appellants do not grapple with the screenplay; the animated video; or any of the evidence or testimony supporting the same. They simply do not acknowledge that the evidence exists.

Our review of the Board's decision and record confirms that it does. *Id.* Substantial evidence thus supports the Board's finding that Andrusiek engaged in trademark uses with the CAPTAIN CANNABIS mark.

## CONCLUSION

We have considered Appellants' remaining arguments and find them unpersuasive. For the reasons above, we affirm the Board's cancellation of Appellants' mark.

## **AFFIRMED**

### COSTS

Costs to Andrusiek.